IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:24CR352-13 |
| ) | |
| IVANGIANNI VALENZUELA ) | |
| GONZALEZ ) | |

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On November 25, 2024, a federal grand jury for this district indicted Defendant Ivangianni Valenzuela Gonzalez ("Defendant") on one count of knowingly, intentionally, and unlawfully conspiring with others to distribute fentanyl, methamphetamine, and cocaine, with the amount attributable to him alleged to be 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and 18 U.S.C. § 2. Defendant was initially arrested in Arizona, and after a detention hearing was held, he was ordered released pending trial on his own recognizance with conditions. However, the Government appealed that determination under 18 U.S.C. § 3145(a), and the District Judge in this district stayed the release decision and ordered that Defendant remain in custody pending further proceedings in this district related to the Government's appeal, specifically a *de novo* detention hearing. (Docket Entry 183.) The District Judge also ordered that this district's Probation Office prepare a pretrial service report. (*Id.*)

On January 23, 2025, the case came before the undersigned for a *de novo* detention hearing. At the end of the hearing, the Court took this matter under advisement. Upon further consideration of the information presented, the undersigned recommends that Defendant be detained pending further proceedings in this matter. The undersigned finds that clear and convincing evidence establishes that no combination of available release conditions would reasonably assure the safety of the community, and a preponderance of evidence establishes that no conditions would ensure Defendant's presence in court. Defendant has not overcome the presumption that he presents a danger to the community and a flight risk.[1]

I. BACKGROUND

Before the hearing and as ordered, a United States Probation Officer in this district prepared an updated Pretrial Services Report regarding Defendant's history, residence, family ties, employment history, financial resources, health (including as it relates to mental health and substance abuse issues), and prior record. Both parties had an opportunity to review that report before the hearing and Defense counsel clarified that the report improperly referenced Count 2 of the Indictment (Conspiracy to Commit Money Laundering), which his Defendant has not been charged with.

At the hearing, Defendant was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by

---

[1] Under 18 U.S.C. § 3142, if there is probable cause to believe that a defendant committed an offense subject to a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, a rebuttable presumption arises, such that "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," 18 U.S.C. § 3142(e)(3). Defendant has been indicted for offenses under 21 U.S.C. §§ 846 and 841, triggering the rebuttable presumption of detention.

proffer or otherwise." 18 U.S.C. § 3142(f). The United States called (and, through his counsel, Defendant cross-examined) United States Postal Inspection Service Task Force Officer Tyler Cheek who investigated this matter, and reviewed reports related to the case. Defendant proffered his uncle, Manuel Santos, as a potential third-party custodian.

II. DISCUSSION

In considering the question of release or detention pending trial, the Court considers the following statutorily-prescribed factors:

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant] . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

Based on the record before it, the Court makes the following findings of fact and/or conclusions of law. First, with respect to the nature of the offense charged against Defendant, the Court notes that the charge is serious, involving alleged participation in a large-scale drug-trafficking distribution across multiple states and with ties to the country of Mexico. Second, the weight of the evidence against Defendant is strong as to the charged offense in that the Government presented the testimony of Officer Cheek who testified about the events leading

3

up to the indictment. Specifically, on multiple occasions Defendant arranged to have several packages shipped across the country from Arizona to North Carolina. Law enforcement conducted video surveillance of Defendant at a residence located at 12727 W. Glendale Avenue, Lot 50, in Glendale, Arizona. Defendant was observed taking disassembled flat boxes into his residence and later exiting the residence with what appeared to be "filled" and assembled boxes. Defendant would then go to the post office to mail the packages. Officer Cheek also testified regarding the execution of a search warrant in October 2023 at the residence. Defendant had a bedroom inside the residence. During the execution of the search warrant, law enforcement officers found approximately 9 kilograms of fentanyl, 3 kilograms of methamphetamine, and a rifle. (The rifle was found in a vehicle that did not belong to Defendant.) Defendant shared the residence with his mother, co-defendant Carmen Valenzuela, who was present during the execution of the search warrant. During the search, a United States Postal Service package was delivered. Carmen Valenzuela advised that the package would contain money. Law enforcement opened the package which contained $100,500 in cash. Carmen Valenzuela said the cash in that package was to be delivered back to Mexico in exchange for drugs. Carmen Valenzuela and another co-defendant (Nicholas "Nick" Curry) advised law enforcement that they knew of ways to get large amounts of cash from the United States to Mexico; Curry further stated that Carmen Valenzuela's boyfriend and major drug supplier, Leon-Soto, taught Curry a "trick" regarding how to transfer such money.

      Officer Cheek further testified that during the search of the residence, Carmen Valenzuela also informed law enforcement that Defendant became involved in the drug

distribution through Leon-Soto. Once Carmen Valenzuela's cell phone was seized and searched, officers discovered messages between her and Defendant including references to money, shipping packages, listing fake names and numbers/addresses, and making sure packages were "taped." The messages also revealed that Defendant and Carmen Valenzuela were working with Nick Curry. In the messages, Defendant stated that he needed money and that he was going in "half" with Nick to move more packages. There were also screenshots involving Nick Curry showing package receipts of money and drugs, and messages involving receiving and/or mailing boxes. In addition, Officer Cheek testified that there were communications where Defendant and Carmen Valenzuela discussed a package that used a fake name on several occasions. The text messages also revealed a conversation about Leon-Soto, indicating that they gave money for the "shoes" to pay car payments. Officer Cheek stated that "shoes" is coded language for "drugs".

Law enforcement later seized the cell phone of Nick Curry. A search of the phone revealed messages between him and Defendant discussing the mailing of drug packages from Arizona to North Carolina. Officer Cheek also testified that Defendant has traveled to Mexico at least six times since March of 2024, with the most recent time being in November 2024.

Finally, the history and characteristics of Defendant raise some concerns. While Defendant's criminal history is limited and shows a default judgment for driving-related offenses, he failed to appear for such charges. Moreover, Defendant has familial ties and recent travel to Mexico.

Having considered the information presented, and based upon the nature of the pending charge, the Court has serious concerns about Defendant's potential danger to the

community and flight risk. The alleged serious offense involves in a large-scale drug trafficking conspiracy across multiple states with connections to Mexico. The testimony of Officer Cheek during the hearing—observations of Defendant at his residence handling packages, the large money package delivery and drugs found during the execution of the search warrant, and Defendant's text message communications with co-conspirators about mailing packages— suggests Defendant's heavy involvement in the drug operation. Moreover, Defendant has previously failed to appear for Court proceedings and has traveled multiple times recently to Mexico, although Defendant reported to the probation office that he did not possess a passport. Considering the seriousness of the offense charged and Defendant's ties to a foreign country, there are significant flight risk concerns. Defendant's uncle is willing to serve as a third-party custodian but was not present during the hearing.[2] Ultimately, the undersigned concludes that the record establishes by clear and convincing evidence that no combination of available release conditions would reasonably assure the safety of the community, and a preponderance of evidence establishes that no conditions would ensure Defendant's presence in court. Defendant has not rebutted the presumption of detention in this matter.

**IT IS THEREFORE RECOMMENDED** that the motion for detention by the United States be **GRANTED** and that Defendant be detained pending disposition of the instant charges under 18 U.S.C. § 3142(e)(1). Defendant should be committed to the custody of the Attorney General of the United States or his designated representative for confinement

---

[2] Defense counsel also indicated that he had a letter from Defendant's employer regarding his continued job availability if he were to be released and that Defendant was a good employee. However, the letter was written in Spanish. The undersigned notes that even if Defendant could return to work, the recommendation for detention remains unchanged due to the concerns stated herein.

in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant should be afforded a reasonable opportunity for private consultation with defense counsel. On order of a United States court or on request of an attorney for the Government, the person in charge of the corrections facility should deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

/s/ Joe L. Webster  
United States Magistrate Judge

January 27, 2025  
Durham, North Carolina